CALIFORNIA COAST OIL COMPANY, PETITIONER, v. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 25018.   Promulgated March 15, 1932.

*John B. Milliken, Esq.*, for the petitioner.
*M. B. Leming, Esq.*, for the respondent.

904

OPINION.

McMahon: The first question to be determined is whether the respondent erred, in determining the tax liability of the petitioner for the years 1918, 1919, 1920 and 1921, in disallowing as operating expenses the amounts of $25,452.78, $24,309.70, $47,101.96 and $9,608.61, respectively, which petitioner paid out in those years for wages, fuel, repairs, hauling, etc., in connection with drilling wells, building of pipe lines, and the development of property under lease by petitioner, and which, for convenience, we term "incidental

development costs." The deficiency letter upon which this proceeding is based does not assert deficiencies against the petitioner for the years 1918 and 1919, and we therefore do not have jurisdiction to redetermine the tax liability of the petitioner for or decide questions relating to those years, except as it becomes necessary in computing the tax liability of petitioner for the years 1920 and 1921. It is the contention of the petitioner that the determination of this issue as to 1918 and 1919 will have a bearing upon the petitioner's tax liability for the years 1920 and 1921, by affecting invested capital for 1920 and 1921, and that the determination of the issue with regard to the year 1919 will result in the finding of a net loss in that year which may be carried forward and deducted from the net income of the petitioner for the year 1920.

It has been stipulated by the parties that the items constituting the amounts set forth above are of the character described in article 223 of Regulations 45 and 62 of the Treasury Department, Internal Revenue Bureau.

Article 223 of Regulations 45, which relates to taxes under the Revenue Act of 1918, provides in part as follows:

*Charges to capital and to expense in the case of oil and gas wells.*—Such incidental expenses as are paid for wages, fuel, repairs, hauling, etc., in connection with the exploration of the property, drilling of wells, building of pipe lines, and development of the property may at the option of the taxpayer be deducted as an operating expense or charged to the capital account returnable through depletion. If in exercising this option the taxpayer charges these incidental expenses to capital account, in so far as such expense is represented by physical property it may be taken into account in determining a reasonable allowance for depreciation. The cost of drilling nonproductive wells may at the option of the operator be deducted from gross income as an operating expense or charged to capital account returnable through depletion and depreciation as in the case of productive wells. An election once made under this option will control the taxpayer's returns for all subsequent years.

Article 223 of Regulations 62, which relates to taxes under the Revenue Act of 1921, is identical with the above quoted portion of article 223 of Regulations 45, except that for the words " operating expense " it uses the words " development expense."

The only question presented in this regard by the parties is whether the petitioner exercised an option under the above article of the regulations and, if so, what type of an option.

The respondent contends that the petitioner exercised the option of charging such expenditures to capital in computing its tax liability for the year 1918 and that for that year and years following petitioner is bound by its election. Petitioner, on the other hand, contends that it elected to deduct such items as an operating expense for the year 1918 and that for that year and the following years, it should be allowed deductions of the amounts expended.

An edition of Regulations 45, embracing article 223, was promulgated February 25, 1919, and another edition of such regulations was approved on April 17, 1919. Petitioner filed its original income and profits-tax return for the year 1918 on June 16, 1919. Therein the petitioner did not deduct its incidental development costs as an expense. Nor did it deduct such costs as expense in its amended return for the year 1918 which is dated June 2, 1921. As a matter of fact, these incidental development costs were charged to capital account on the petitioner's books in the years 1916, 1917 and 1918. There is evidence to show that in 1919 the Union Oil Company, which controlled the policies of the petitioner in respect to its cost accounts and records, issued instructions to charge incidental development costs for 1918 to expense, and that petitioner's bookkeeper, William J. Hanna, did not act in accordance with instructions when, in making a certain reforming journal entry on December 31, 1919, he failed to charge the amount of incidental development costs to expense for that year. However, in our opinion, these instructions issued by the Union Oil Company in 1919 are not decisive of the question, since petitioner may have made an election prior to that time.

George H. Forster, who is now comptroller of the Union Oil Company and who was chief accountant of that company in 1918 and 1919, testified that in 1918 the Union Oil Company, in its control of the petitioner and its other subsidiary companies, determined that those companies should charge expenditures of the nature here in question to expense, and indicated that since the books of the petitioner in the year 1918 showed these expenditures as charged to capital, Hanna, who kept petitioner's books in that year, had made a mistake. However, the testimony of Forster, taken in connection with the whole record, we believe, indicates that the error to which he refers was the error made by Hanna in making the journal entry on December 31, 1919. Hanna himself testified that he later learned that he had made an error in making the entry on December 31, 1919, but his testimony does not establish that the entries on the books made in the year 1918 were at variance with the policy or instructions in existence at that time. Furthermore, the evidence discloses that during 1918 the Union Oil Company itself charged items of this nature to capital and that it was not until some time in 1919 that it determined to treat its own expenditures of this nature to expense. For these reasons we do not feel justified in accepting the above referred to testimony of Forster as proof that during 1918 there had been established by the Union Oil Company a policy of having the petitioner charge items of this nature to expense.

Even if the Union Oil Company had determined upon such a policy for petitioner, we do not believe that this necessarily would be

governing. The petitioner is a separate entity from the Union Oil Company and the regulations refer to an election by " the taxpayer." Nowhere in the record in this proceeding is there any evidence as to any action taken by " the taxpayer," either through its directors or officers, in regard to the exercise of this option.

The respondent has held that the petitioner elected to capitalize this type of expenditure, and the burden is upon the petitioner to introduce sufficient facts to overcome the presumption in favor of the correctness of the respondent's determination. From a consideration of the entire record we are constrained to hold that the petitioner has not shown that it did not elect to charge these items to capital in computing its tax liability for the year 1918. We approve the respondent's action in treating these items as capital expenditures in each of the years 1918, 1919, 1920 and 1921.

We do not consider this holding in conflict with *Sterling Oil & Gas Co.* v. *Lucas*, decided by the District Court for the Western District of Kentucky on July 21, 1931, which is relied upon by the petitioner. In that case it clearly appeared that the taxpayer had not finally disposed of the oil well development costs on its books until after the filing of its return for the year 1919, that the board of directors of the taxpayer did then deliberately elect to treat them as expenses, and that in an amended return the taxpayer treated them as expenses.

In view of the above holding as to the proper method of handling incidental development costs, the petitioner's contention that it sustained in 1919 a net loss which may be allowed as a deduction in computing its net income for 1920 fails. The respondent held that there was a deficiency in tax due for the year 1919 and there is no showing that he erred.

There is no evidence to show that the respondent erred in computing depletion deductions for 1920 and 1921 as alleged by petitioner. The respondent's determination in each of the above respects is approved.

Petitioner also contends that during 1920 and 1921 there were abnormal conditions affecting its capital and income within the meaning of section 327 of the Revenue Acts of 1918 and 1921, and that it is entitled to have its profits taxes for those years computed in the manner specified in section 328 of those revenue acts. The Revenue Act of 1918 provides in part as follows:

SEC. 327. That in the following cases the tax shall be determined as provided in section 328:

* * * * * * *

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the

corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital, nor (2) in which 50 per centum or more of the gross income of the corporation for the taxable year (computed under section 233 of Title II) consists of gains, profits, commissions, or other income, derived on a cost-plus basis from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.

Sec. 328. (a) In the cases specified in section 327 the tax shall be the amount which bears the same ratio to the net income of the taxpayer (in excess of the specific exemption of $3,000) for the taxable year, as the average tax of representative corporations engaged in a like or similar trade or business, bears to their average net income (in excess of the specific exemption of $3,000) for such year. * * *

Sections 327 and 328 of the Revenue Act of 1921 contain the same provisions.

Petitioner did not pay out any salaries to its officers and directors during those years. These officers and directors were also officers and directors of the Union Oil Company of California and were capable men. They were largely responsible for the income of the petitioner in the years in question. There was testimony that the reasonable value of their services would be between $25,000 and $50,000 for each of the years in question, and we have found as a fact that their services were reasonably worth at least $25,000. There was also competent testimony adduced at the hearing which shows that it was abnormal in 1920 and 1921 in the oil industry for a corporation having the volume of business and the amount of income which petitioner had in those years not to be required to pay salaries to its officers.

During 1920 and 1921 petitioner did not pay office rent, office space being furnished it free of charge by the Union Oil Company, and the bookkeeping for petitioner was done by the Union Oil Company at cost. The petitioner's general office expenses for 1920 and 1921 were in the relatively small amounts of $2,040.67 and $2,154.72, respectively. The evidence shows that in 1920 and 1921 it was abnormal in the oil industry for a company having the volume of sales and income which petitioner had in those years to have such a small amount of office expense as petitioner had.

The petitioner did not incur any expense with respect to the marketing of its product. Its directors and officers negotiated contracts for the purchase of its commodity.

It is our opinion that the above described conditions constituted such abnormal conditions affecting petitioner's income of the years in question that the petitioner is entitled to have its profits taxes for

the years 1920 and 1921 computed in the manner specified in section 328, *supra*. See *G. Angelo Co. et al.*, 12 B. T. A. 460, where the fact that no officers' salaries were paid was held to create an abnormality entitling taxpayer to special assessment; *Sol Frankel, Inc.*, 3 B. T. A. 494, where inadequacy of officers' salaries was held to create an abnormality entitling taxpayer to special assessment; *San Francisco Hotel Co.*, 22 B. T. A. 740, where it was held that facts that officers received no salaries and that the taxpayer was required to pay a low rental created an abnormal condition entitling taxpayer to special assessment; and *Hirsch & Spitz Mfg. Co.*, 21 B. T. A. 1186, wherein it was held that abnormal conditions obtained entitling taxpayer to special assessment where there was a disparity in the ratio of expenses to earnings, the taxpayer obtained its manufacturing building from the owners at less than normal cost, the taxpayer had the use of a large sales force without cost, and its officers' salaries were below normal.

Since we have held that petitioner is entitled to special assessment for the years 1920 and 1921, it becomes unnecessary to further consider the other contentions raised by petitioner with regard to invested capital for those years.

*Further proceedings may be had under Rule 62 (c).*